## DAVIS et al. v. FIRST NAT. BANK OF WACO.

### No. 2195.

Court of Civil Appeals of Texas. Waco.

Nov. 28, 1940.

Opinion after Remittitur Dec. 5, 1940.

Rehearing Denied Dec. 19, 1940.

Raymond E. Buck, of Fort Worth, and Victor C. McCrea, of Henderson, for plaintiffs in error.

Sleeper, Boynton & Kendall, of Waco, for defendant in error.

TIREY, Justice.

This is a suit in trespass to try title, brought by The First National Bank of Waco against Irma Powers Davis and her husband, Thurman Davis, to recover title to and possession of two tracts of land in the city of Waco, Texas. Defendants answered in due order of pleading, and, in addition thereto, filed cross-action against plaintiff in trespass to try title for title and possession of said property. Plaintiff answered the cross-action, and, by way of alternative plea, asked that in the event the defendant should prevail, the court recognize and foreclose its lien for taxes paid in good faith and belief of ownership, subsequent to execution and delivery of guardian's deed to it. The case was tried before the court without the intervention of a jury upon an agreed stipulation as to the evidence, subject to certain objections as to admissibility. The trial court awarded to the bank title to and possession of the north one-half of the first tract and the whole of the second tract. The defendants recovered of the bank the title and possession of the south one-half of the first tract. The court found that the bank had paid taxes in good faith and under color of title and claim to ownership of the real estate decreed to defendants and established as a charge and lien (the taxes so· paid, less rents collected) against the property awarded to defendants, and further awarded to said bank a personal judgment against defendants, together with foreclosure of said lien. The defendants have appealed. The parties will be designated as in the trial court.

Anderson Powers and his wife, A. E. Powers, constitute the common source of title. The property involved was community property of their marriage. A. E. Powers died testate in 1899, leaving her husband and two children only, Laura Powers and Albert Powers, who were the sole beneficiaries under her will which was duly probated. Albert Powers, aforesaid, died intestate in 1906 and left surviving him his widow, Mrs. Lola Powers, and two children only, Albert R. Powers, a boy then 5½ years old, who died in October 1913, while still a minor, intestate and unmarried, and Irma Powers, 9 years old at her father's death, now the wife of Thurman Davis, one of the defendants in this suit. Anderson Powers, aforesaid, died testate in 1909,

without having remarried, and his will was duly admitted to probate. He left surviving him one child only, Laura Powers, and two grandchildren only, Albert R. Powers and Irma Powers, aforesaid, children of his deceased son. It is admitted that Laura Powers took the fee to the property she received under the terms of her mother's will, but there is a controversy as to the title that Laura took under the will of her father.

That part of her father's will which is pertinent to the matter in question is as follows: "The remainder of my interest in said estate I give equally to my two children, Laura and Albert, they to have the use of it and the income from it during their natural lives but not to sell or dispose of it in any way, after which it will inure to their legal heirs."

In August, 1909, decree of partition was entered in suit in the 19th District Court of McLennan County, brought by Irma Powers (now Irma Powers Davis) and Albert R. Powers, minors, by next friend, against Laura Powers and Lola Powers. This decree, among other things, directed that said partition be made according to quality, quantity and value between the said parties in accordance with the decree, but specified that partition not be made between Mrs. Lola Powers and her minor children, but to partition the interest of Laura Powers from said widow and her two children, and report their action to the court. No issue is made or raised as to the division between the parties. The commissioners allotted to Laura Powers the property in litigation (and other property). The decree set apart to Laura Powers, in severalty, the share awarded to her, and with reference to the interest received under her father's will provided: " * * * And the possession of the other one-half undivided interest in and to the said real estate be and the same is hereby divested out of all of the said other parties to this cause, their heirs, executors, administrators or assigns and such possession and right be and the same is hereby vested in the said Laura Powers for and during her natural lifetime only under and by virtue of the terms of the will of her father, A. Powers, whereby all of the rights and income therefrom during her natural life are vested in her absolutely to dispose of as she desires and she is to have the exclusive use of the said property, real for and during her natural lifetime. After her death the right and title in and to an undivided one-half interest in and to all of

said real property shall go to the legal heirs of the said Laura Powers absolutely." Laura Powers voluntarily made her appearance and waived citation and service in the above cause and it was done in this manner: The waiver was signed "Laura Powers, by Prendergast & Williamson, attorneys for said defendant." The validity of said decree of partition is in nowise attacked. It was stipulated that "Laura Powers was, from birth, afflicted both in body and mind, being epileptic, having one side paralyzed, and her mental capacity never at any time exceeded that of a child seven or eight years of age." (Counsel, for both parties in their briefs have treated Laura Powers as a non compos mentis.) Laura Powers was adjudged a person of unsound mind in the Probate Court of McLennan County in March, 1915, and a guardian of her person and estate was appointed and the guardian qualified and acted until his death in October, 1928. Thereafter, another guardian was appointed and he qualified and continued to act until Laura Powers' death, which occurred on November 9, 1937.

In December, 1936, the guardian of Laura Powers, duly authorized thereunto by the Probate Court, executed and delivered a deed to the bank conveying the property involved in this law suit and other property not necessary to this discussion, said property constituting the bank's security, in satisfaction of the estate's indebtedness (approximately $30,000). It appears that the guardian and the bank believed the property was correctly described and the bank went into possession of the property immediately and retained possession continuously since the date of the deed, paying taxes on the property and exercising dominion and control over the same. The judgment entered by the trial court has been assailed mainly on three grounds: (1) That the description of each tract in question was insufficient to pass title; (2) that there was no evidence to sustain the award to the bank for taxes paid in good faith and foreclosure of tax lien against the property awarded to defendants; and (3) that Laura Powers took only a life estate under her father's will, as decreed in the partition, and therefore the title to that share received by her under said will must fail.

We think the third assignment presents the only serious question in this case, and, for that reason, we will discuss it first. As above stated, all parties have treated the decree of partition as a valid judgment and said decree of partition is a muniment of such title as the bank acquired by its mortgage and deed hereinbefore referred to. The first question that presents itself to us is whether Laura took a life estate only or an estate in fee under her father's will; and second, what effect, if any, was the decree of partition on the title that Laura acquired by virtue of her father's will.

██ The language in her father's will, which is controlling, is as follows: "The remainder of my interest in said estate I give equally to my two children, Laura and Albert, they to have the use of it and the income from it during their natural lives but not to sell or dispose of it in any way, after which it will inure to their legal heirs." We are of the opinion that the rule in Shelley's Case applies to the foregoing provision of the will and that under said rule, Laura took the fee to the title to the property which she received under her father's will. A concise statement of this rule is: "When a person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs or the heirs of his body, as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." 4 Kent Com. 215; Hawkins v. Lee, 22 Tex. 544; Hancock v. Butler, 21 Tex. 804; Simonton v. White, 93 Tex. 50, 53 S. W. 339, 77 Am.St.Rep. 824; Lacey v. Floyd, 99 Tex. 112, 87 S.W. 665; Seay v. Cockrell, 102 Tex. 280, 115 S.W. 1160. "The rule in Shelley's Case is in force in Texas, and has become a rule of property." See Lacey v. Floyd, supra [99 Tex. 112, 87 S.W. 667]. In applying the foregoing rule, our courts have held: "The uniform conclusion is reached that no matter how clear and unequivocal the language by which a life estate only is sought to be given to the ancestor, this purpose and intention is overturned by granting in the same instrument a remainder to his heirs, general or special." Crist v. Morgan, Tex.Com.App., 245 S.W. 659, 660.

██ Did the decree of partition divest Laura Powers of the fee simple title to the property she received under her father's will? We think not. In order to determine the effect of the decree of partition, it is necessary to consider the issue made by the

pleadings in said suit. (The pleadings are in evidence.) The original petition, in part, alleged: "That the plaintiffs and defendants, each of them own and are interested in an undivided interest in and to the following described properties, both real and personal; that said property is capable of partitioning in kind; that the·property so owned jointly by plaintiffs and defendants is described as follows: * * * (then follows description of property)." Said petition further alleged: "Of the above real estate these plaintiffs are entitled to a one-fourth interest each in and to all of said property, except the property known as the Hinchman residence on Columbus Street. As to that piece of property they are entitled each to a one-fourth interest in and to said property, after deducting the sum of $4500.00 from the value thereof, which goes to the defendant Laura Powers, and the defendant, Laura, is entitled to a one-half interest in and to said real estate, plus $4500.00 value in the Hinchman property; * * *". The prayer, among other things, asked "that your petitioners do have and recover of and from the defendants their interest in said real and personal property as hereinbefore alleged." Laura's pleadings raised no new issue. She merely entered her appearance (by waiver) as hereinbefore stated. There is nothing in the pleadings of any of the parties asking for a construction of the will of Anderson Powers. The parties, according to the pleadings, owned the property jointly and the relief sought was a severance or a partition of their present interests in the property. There is no allegation that the minors had or claimed any remainder interest in the title to the property that Laura acquired by virtue of her father's will. "It is an established general principle that a party is concluded by a judgment in the right only in which he sued or is sued." Caruth v. Grigsby, 57 Tex. 259, point page 266. "A partition between joint owners does not confer title upon either, but has the effect only to dissolve the tenancy in common, and leave the title as it was before, except to locate such rights as the parties may have, respectively, in the distinct parts of the premises, and to extinguish such rights in all other portions of that property." Chace v. Gregg, 88 Tex. 552, 32 S.W. 520, point page 522. "In this state partition by suit, whether brought under the statute or without the aid of the statute, does not proceed independently of the rules of equity." Thomas v. Southwestern Settlement & Development Co., 132 Tex. 413, 123 S.W.2d 290, point page 296; Arnold v. Cauble, 49 Tex. 527. Now we think it definitely appears that the legal status of the minors, Irma and Albert R. Powers, as the heirs of their father and grandfather, was something entirely distinct from their legal status as the heirs of their aunt, Laura. See Thompson v. Cragg, 24 Tex. 582, point page 596. The record is undisputed that at the time the decree in the partition suit was entered, Laura was unmarried and she lived for approximately twenty-nine years after the decree of partition was entered without having been married and without having issue born to her. Therefore, Laura's heirs as such were unknown at the time the decree of partition was entered and the identity of Laura's heirs at that time could not have been determined and the decree of partition did not do so. We therefore hold that the pleadings in the partition suit did not raise the issue of the respective rights of Laura and her legal heirs in and to the interest bequeathed to her under her father's will, and that neither the issue nor her legal heirs as such were before the court for such adjudication. It is the rule in Texas that " * * * a court of equity will not take jurisdiction of a suit for the construction of a will unless it can afford immediate relief. * * *" Cousins v. Cousins, Tex.Civ.App., 42 S.W.2d 1043, 1045, writ refused; Munger v. Richards, Tex.Civ. App., 87 S.W.2d 797; 69 C.J. 868. "Courts do not sit to decide mere abstract questions of law, but to redress grievances and prevent wrongs." Moore v. Stark, 118 Tex. 565, 17 S.W.2d 1037, point page 1041. Moreover, when the language of the decree is considered in its entirety, it does not leave us to speculate but it expressly vested title in Laura to the property allotted to her in the partition exactly as it was vested in her under the terms of the wills of both her mother and father and the exact language of her father's will was incorporated in the decree with reference to the share which she received thereunder. "When the language of a decree is susceptible of two constructions, from one of which it follows, that the law has been correctly applied to the facts, and from the other that the law has been incorrectly applied, that construction should be adopted which correctly applies the law." Gough v. Jones, Tex.Com.App., 212 S.W. 943, 944; In re Summers, 79 Ind.App. 108, 137 N.E. 291; Treece v. Treece, 125 Cal.App. 726,

14 P.2d 95. We are therefore of the opinion and hold that since Laura took the fee to the share devised to her under her father's will, her title as such was not impaired by the decree of partition. Vernon's Annotated Statutes, art. 6099; Black on Judgments, Vol. 2, p. 797; O'Connor v. Vineyard, 91 Tex. 488, 44 S.W. 485, point page 488.

We think that the description of each tract in question was sufficient to support the court in the award of the tracts it made to the bank. We believe that it is controlled by the rule "that the description given in such a deed, or other documents therein referred to, is sufficient, if it enables the land to be identified with reasonable certainty." 14 Tex.Jur. 999; Hermann v. Likens, 90 Tex. 448, 39 S.W. 282. See, also, Battle v. Wolfe, Tex.Civ.App., 283 S.W. 1073, writ refused.

We also think the evidence is ample to support the judgment of the court that the bank paid the taxes in good faith and under color of title, and that it is entitled to be reimbursed. Gilmore v. O'Neil, 107 Tex. 18, 173 S.W. 203; 14 Tex.Jur. 1003; Meador Bros. v. Hines, Tex.Civ. App., 165 S.W. 915, point page 922, error refused.

Defendants complain of the action of the court in awarding personal judgment against them for the amount of the judgment for taxes paid in good faith. No motion for new trial was filed in the district court, nor does it appear from the record that the defendants complained of any error in the calculation of the amount of taxes paid in good faith, nor to the award of personal judgment against them. It does not appear that these questions were raised until after the appeal was perfected in this court. The pleadings of both plaintiff and defendants alleged that the defendants were husband and wife. 23 Tex.Jur. p. 344; Graham v. Carmany, Tex.Civ.App., 2 S.W.2d 467. Bank's counsel set out in their briefs " * * * the amount of the judgment for taxes paid in good faith was miscalculated by us and should have been $980.33 instead of $1230.83, and hasten to enter our remittitur at the first opportunity for the difference. * * * We are perfectly willing to enter a further remittitur to such judgment to the extent that it fixes a personal liability on plaintiffs-in-error, beyond their interest in the security, provided, however, if plaintiffs-in-error continue to prosecute their appeal on other points, after the entry of such remittitur, that all costs of appeal be adjudged against plaintiffs-in-error if the judgment be affirmed on all such other points; and, with such proviso, we here now enter such remittitur." We are of the opinion that the case should be affirmed on all other points raised by defendants and upon the filing of the remittiturs by the bank as above indicated, this cause will be reformed, and as reformed, affirmed. We are also of the opinion that because of the failure of the defendants to call the errors aforesaid to the attention of the trial court, this reformation will not be at the cost of the appellees. See Houston Gas & Fuel Co. v. Perry, Tex.Civ.App., 55 S.W.2d 901. The bank is given ten days from this date in which to file the remittiturs hereinabove referred to. Otherwise, the judgment of the trial court will be reversed and the cause remanded. Vernon's Annotated Civil Statutes, art. 1862.

### Opinion after Entry of Remittitur.

The defendant in error has entered remittitur in accordance with the provisions of the opinion of the court dated November 28, 1940. The judgment of the trial court is therefore reformed in conformity with said remittitur, and as reformed, is affirmed. All costs incurred herein are assessed against plaintiffs in error, Irma Powers Davis and husband, Thurman Davis, and Commercial Standard Insurance Company, surety on their appeal bond.