[Civ. No. 6243.    Fourth Dist.    Nov. 19, 1959.]

CHARLOTTE ANDREWS, Appellant, v. CITY OF SAN
BERNARDINO et al., Respondents.

Alexander Ruiz and Manuel Ruiz, Jr., for Appellant.

William A. Flory and Ralph H. Prince, City Attorneys, Waldo Willhoft and William J. Ward for Respondents.

SHEPARD, J.—This is an action wherein petitioner seeks in the first count of her petition a judicial review of the proceedings of the Mayor and Common Council of the City of San Bernardino (hereinafter called Council), and of the proceedings of the Redevelopment Agency of the City of San Bernardino (hereinafter called Agency), as is provided for by Health and Safety Code, section 33746. In a second count, petitioner seeks a writ of mandate to compel a referendum to the voters of the City of San Bernardino of an alleged legislative act of Council by which it approved a final Redevelopment Plan for Meadowbrook Project Number 1. Petitioner also seeks a preliminary injunction to restrain Council and Agency from any other proceeding until final determination of this proceeding. The trial court held the allegations of the first count to be sufficient to state a cause for the judicial review requested. It sustained without leave to amend the demurrers to the second portion of the petition, wherein petitioner seeks mandamus to compel referendary action. The motion for a preliminary injunction was denied. Plaintiff appeals from the judgment of dismissal of the second count (pertaining to mandamus) and from the order denying a preliminary injunction.

The proceedings of the Council and Agency hereinbefore referred to were foundational for the ultimate crystallization into action of a redevelopment project for the City of San Bernardino, identified as Meadowbrook Project Number 1. The chronology of the various steps which led up to the adoption of Ordinance Number 2217 (the tentative redevelopment plan), which was the foundational predecessor of Ordinance Number 2233 (the final plan and the ordinance here under attack) will be found in *Andrews* v. *City of San Bernardino,* 4 Civil No. 5983, *ante,* p. 454 [346 P.2d 454] (1959), filed this day by this court.

In the action here at bar a petition was circulated demand-

ing a referendum vote pursuant to section 121 of the charter of the City of San Bernardino to determine whether or not the electorate of San Bernardino would approve the passage of said Ordinance Number 2233. It is conceded that the petition contained the required number of lawful signatures and that the Council refused referendary action. Petitioner then sued for a writ of mandate to compel Council to either repeal said Ordinance 2233 or to submit the same to the electorate of the city for approval or rejection in accordance with said section 121.

Council takes the position that the action involved in Ordinance Number 2233 is not legislative in character but is merely an exercise of the executive and administrative powers of Council, and is therefore not subject to referendary proceedings. With this position we are compelled to agree.

Long before the proceedings subject of this dispute arose, our Supreme Court had unequivocally established the rule that under a state law of the type here involved the Council acts in an administrative and not in a legislative capacity, and that a referendum will therefore not lie. ██ "The power of referendum applies only to acts that are legislative in character; executive or administrative acts are not within the scope of that remedy." (*Housing Authority* v. *Superior Court,* 35 Cal.2d 550, 557 [5] [219 P.2d 457].) As a consequence, a determination that Ordinance Number 2233 constituted an administrative action on the part of Council would prevent the issuance of a writ of mandamus to compel a referendum of said ordinance. ██ A careful comparison of the Community Redevelopment Law and of the Housing Authority Law, both of which are contained within division 24 of the Health and Safety Code, convinces us that there is no substantial difference in the general structure and plan of operation insofar as it affects the question of exercise of legislative power which is here presented.

"Section 4 of the Housing Authorities Law provides that there is created in each city . . . of the state a public body corporate and politic to be known as the 'housing authority'; but that such authority shall not function until or unless the governing body of the city . . . , by proper resolution shall declare that there is need for the authority to function." (*Kleiber* v. *City etc. of San Francisco,* 18 Cal.2d 718, 720 [117 P.2d 657].)

Since the power of such a Housing Authority is such as the Legislature may delegate (*Kleiber* v. *City etc. of San Fran-*

*cisco, supra,* 725 [3] ), we can find no valid reason why the comparable acts in the Community Redevelopment Law could not be equally delegated. As is true under the Housing Authority Law, all considerations of wisdom, policy and desirability connected with the functioning of a redevelopment plan became settled and have been resolved adversely to the position of petitioner herein by the action of the state and of Council in the original declaration of the existence of the need. Upon the formation of the Redevelopment Agency the state law thereupon and thereafter controlled the city and Redevelopment Agency, and all other acts fell within the executive or administrative functions. ''Neither is functioning independently of that state law. In pursuing the state objective each is governed by the state law and neither may exercise powers not vested or recognized by that law.'' (*Housing Authority* v. *City of Los Angeles,* 38 Cal.2d 853, 862 [243 P.2d 515].) As a consequence, when operating pursuant to the Community Redevelopment Law, the same rules apply as with respect to the Housing Authority Law wherein it has been held that the city and Housing Authorities function as administrative arms of the state because they pursue a state concern and effectuate a state legislative objective. (*Housing Authority* v. *City of Los Angeles,* 38 Cal.2d 853, 862 [243 P.2d 515].) The standard is:

''When the sole basis for a determination is whether a certain 'contingent effect' exists to warrant local application of state legislation, the exercise of that narrow authority is an administrative act and not a legislative one.'' (*Housing Authority* v. *Superior Court,* 35 Cal.2d 550, 558 [7] [219 P.2d 457].)

We see no valid distinction between the resolution of the Council (whether it be called Ordinance or some other name) pursuant to the Community Redevelopment Plan and the Housing Authority Law in respect to whether there is a right to referendum. (*Housing Authority* v. *Superior Court,* p. 559 [9-10] ; *Lockhart* v. *City of Bakersfield,* 123 Cal.App.2d 728 [267 P.2d 871].)

The two California cases upon which petitioner most strongly relies are *Burdick* v. *City of San Diego,* 29 Cal.App. 2d 565 [84 P.2d 1064] and *Collins* v. *City & County of San Francisco,* 112 Cal.App.2d 719 [247 P.2d 362]. The Burdick case merely follows the time-honored rule established many years ago by our Supreme Court that the designation of the location of the seat of government or of important govern-

mental functions within a city is a legislative matter subject to referendary control. That case makes clear that once the legislative policy is established (as pointed out in the Housing Authority cases) the administrative acts following therefrom are not subject to referendum. The Collins case simply upheld the validity of referendary submission to the voters of San Francisco of a salary standardization ordinance by which the city's long time policy respecting adjustment of salaries was sought to be established. In the case at bar, the establishment of policy had already been completed by the California Legislature by the adoption of the Community Redevelopment Law and by the declaration of need adopted by Council in 1952. Ordinance 2233 merely makes the factual findings required for final approval of a redevelopment project under the Community Redevelopment Act, which enumerates the procedural steps necessary to set up a community redevelopment project. Here, as in the Housing Authority case, in adopting Ordinance Number 2233 the Council was merely acting in an administrative capacity for the purpose of effectuating the stated legislative policy theretofore adopted. This is not true in either the Burdick or the Collins case.

With respect to the issuance of a preliminary injunction the trial court had the duty of weighing with great care the question of which party was most likely to be severely injured by the granting or denial of the preliminary injunction. ■ As is said in *McCoy* v. *Matich,* 128 Cal.App.2d 50, 52 [274 P.2d 714] :

" 'It is a rule so universally followed and so often stated as to need only to be referred to that the granting, denying, dissolving, or refusing to dissolve a preliminary or temporary injunction rests in the sound discretion of the trial court upon a consideration of all the particular circumstances of each individual case.' ■ It is further the rule that 'The discretion, however should be exercised in favor of the party most likely to be injured.' "

The many and varying problems of potential damage to the city and the state in obstructing a project of this kind, and of the possible damage to taxpayers in failing to obstruct it, are matters that lie within the sound discretion of the court, and in reviewing them we are unable to say that the trial court abused its discretion in refusing to grant the preliminary injunction.

Petitioner has made no point of amending her petition and

we are unable to discover how she could adequately amend it in the respect in which demurrers were sustained.

The judgment and orders appealed from are affirmed.

Griffin, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied December 15, 1959, and appellant's petition for a hearing by the Supreme Court was denied January 13, 1960. Schauer, J., was of the opinion that the petition should be granted.